GOSS HEATING AND PLUMBING COMPANY, Respondent, v. FRANK L. OVIATT, Appellant.

Kansas City Court of Appeals, January 28, 1895.

1. **Trial Practice**: INSTRUCTIONS. This case furnishes another illustration of a large number of unnecessary instructions, yet, while subject to some technical criticism, the instructions, when read together, are plain and correct declarations of the law in the case.

2. **Landlord and Tenant**: LEASE CONSTRUED. The lease in controversy in this case is construed to mean, if the building became uninhabitable and was not rendered habitable by repairs within a reasonable time, then the rent was to cease.

3. **Definitions**: HABITABLE: NON-HABITABLE: LEASE. The term habitable as used in the lease in controversy in this cause, is such a condition as to be reasonably fit for the tenants to use the rooms for such purposes as they were reasonably and naturally adapted and for such uses as they might be reasonably put to. And uninhabitable is the converse thereof.

4. **Reasonable Time**: LEASE: REPAIRS: INSTRUCTION. An instruction submitting the question of a reasonable time to the jury for making repairs according to the terms of the lease is approved.

5. **Landlord and Tenant**: LEASE: REPAIRS: TENANT'S WALL DECORATIONS. The clause in the lease in controversy in regard to repairs did not contemplate that the landlord should restore wall decorations placed there by the tenant.

*Appeal from the Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

AFFIRMED.

*Harkless & O'Grady* for appellant.

The lease expressly provided that the landlord should make the premises habitable in case of fire. The instruction of the court relieved plaintiff of that obligation, if the matter that rendered the premises

uninhabitable occurred in some part of the room upon which defendant had made some repairs. We can not see where this philosophy finds its parentage. This was not a lease of whole premises, but the lease of one room in a five story building, and the obligation to repair does not rest upon the tenant but upon the landlord in such cases where injured by fire. *Bissell v. Floyd*, 100 Ill. 214; *Hall v. School District*, 24 Mo. App. 219; 2 Wood's Landlord and Tenant, pp. 1032 and 1033; Wharton on Contracts, sec. 318. (2) Instruction number 6, given at instance of plaintiff, defining inhabitable was erroneous. *Jackson v. Eddy*, 12 Mo. 209; *Lewis v. Chisholm*, 68 Ga. 40; *Keirnan v. German*, 61 Miss. 498; *Van Every v. Ogg*, 59 Cal. 563. (3) Instruction 12, given on behalf of plaintiff, says in effect that the jury are the sole judges of what is reasonable time for the repairing to be done. In determining what was reasonable all the circumstances in the case should be taken into consideration, the situation of the contracting parties at the time, and placing before the jury all the circumstances known to both parties at the time. *Ellis v. Thompson*, 3 M. & W. 445; *Croker v. Franklin*, 3 Sumn. (U. S.), 530. *Jones v. Anderson*, 82 Ala. 302; *Fruin v. Railroad*, 89 Mo. 407; 31 Am. Dec. 720. (4) Instruction number 8, given for plaintiff, told the jury that plaintiff was not bound to repair the paper upon the wall. The statute of this state says the defendant was not bound to do it. R. S. 1879, sec. 2393. And the lease says if the repair is not made in a reasonable time the obligation to pay rent shall end. Now, where are we AT?

*Lathrop, Morrow, Fox & Moore* for respondent.

(1) In the other instruction the jury are told that all the surrounding facts and circumstances are to be

taken into consideration in determining whether the premises were made habitable within a reasonable time. Defendant's instruction number 6 was properly refused. Sackett on Instructions to Juries, sec. 11; *Jones v. Jones*, 57 Mo. 138; *Forrester v. Moore*, 77 Mo. 651; *Barr v. City of Kansas*, 105 Mo. 559. (2) Instruction number 6 for plaintiff, is to the effect that the term uninhabitable does not mean a condition of the premises which simply makes the occupancy inconvenient or annoying or less pleasant than before said condition happened, but means a condition which renders said premises incapable of being occupied for business purposes generally to which the premises might reasonably be put and adapted, etc. Webster's Dictionary; *Voeglei v. Marble and Granite Co.*, 56 Mo. App. 678; *Noble v. Blount*, 77 Mo. 235, and many other cases. (3) The necessity for the instruction is emphasized by the turn of the appellant's argument just above, where it is asserted that the lease made it the duty of plaintiff to repair the premises. The lease does not make it the duty of plaintiff to repair. If it does, will counsel kindly point out the provision in the lease? (4) As to the point made by appellant's counsel, under heading V. of their brief, they seem to us to be laboring under a total misapprehension of the meaning of the statute cited, of the meaning of the lease, and of the points at issue. If plaintiffs were here suing appellant for failure to repair the paper upon the wall under the covenant by the lease to repair, the statute might be cited with effect. Appellant's counsel misquote the lease. The lease does not say, "if the repair is not made in a reasonable time," but "unless the premises are made habitable within a reasonable time." We confess our complete inability to understand appellant's proposition, or to inform appellant's counsel where they are AT.

GILL, J.—On the first day of September, 1891, defendant Oviatt began the occupation of the ground floor of a five story building under a written lease with plaintiff, for a term ending March 1, 1894. Defendant was a boot and shoe dealer, and continued to occupy the store room until August, 1892, when he sublet the same to the Gill Piano Company—the defendant, however, continuing liable for the rent due to the plaintiff.

On January 13, 1893, the adjoining building was destroyed by fire and along with it the Goss building was injured by the partial destruction of the roof and water percolating through the upper floors down into the room occupied by Oviatt, or rather by his subtenant. The piano company moved out for a few days, but returned and occupied the store in about a week thereafter. By the terms of the lease, Oviatt was to pay plaintiff $200 per month, but had sublet to the piano company at $160 per month.

On the second day after the fire, Oviatt gave the plaintiff notice that he would no longer hold the premises under lease, claiming the right to abandon the same under a provision thereof, reading as follows: ''In case premises are destroyed or rendered uninhabitable, then the obligation to pay rent under this lease shall end, unless the premises are made habitable within a reasonable time, and when uninhabitable, no rent shall be collected.''

This is a suit for the rent of February, 1893. On a trial by jury, in the circuit court, there was a verdict for plaintiff, and from a judgment thereon defendant has appealed.

I. After a careful examination of this record, together with the various objections urged in defendant's brief, we fail to discover any reasonable ground for disturbing the judgment.

We observe here the fault so common with trial lawyers—that is, burdening the case with a large number of unnecessary instructions. This is a simple case; indeed there are but two questions in it; and yet counsel seem to have succeeded in getting the trial judge to give to the jury seventeen instructions, many of them, too, quite lengthy. It is not surprising, then, that the astute and ingenious counsel for defendant have been able to detect some words and phrases subject to technical criticism. In our opinion, however, the instructions, when all read together as one charge, are so plain and correct as declarations of the law applicable to the case that the jury could not have been misled.

The defense rests upon the clause of the lease quoted above. And under this, as already said, two questions arose: *First,* was the store room rented to the defendant rendered *uninhabitable* by the fire? And, *second,* if rendered uninhabitable, was it subsequently made habitable within a reasonable time? If the destruction of the adjoining building did not, in fact, render the defendant's store uninhabitable, then there was no defense to this action. If, however, the store was by the fire made uninhabitable, still the defendant was bound for the rent, if made habitable within a reasonable time thereafter. This was the law of the case, because it was the contract between the parties. The court in effect so instructed the jury—coupling the same with some other instructions as to the meaning of the terms *"habitable," "uninhabitable,"* etc. As to these definitions, the instructions are full of unnecessary repetitions, but the jury were fairly told, in the words of defendant's number 2, that, "The term, 'habitable,' as used in the lease, and in these instructions, means: In such a condition as to be reasonably fit for tenants to use the rooms for such

purposes as they were reasonably and naturally adapted and for such uses as they might be reasonably put." And in defendant's instruction number 3, they were clearly advised as to what was meant by *uninhabitable*, which, indeed, is the mere converse of *habitable*. Said number 3 is as follows:

"If, during January, 1893, the portion of the building leased by Oviatt was in such a condition as not to be habitable, as that term is defined in foregoing instruction number 2, then all obligation to pay rent ceased, unless the premises were made habitable within a reasonable time; and if you find that the premises became in January, 1893, in such a condition as not to be habitable, then, unless the premises were made habitable within a reasonable time, your verdict must be for defendant."

As to what was a reasonable time for putting the store room in order and rendering the same habitable, the jury were correctly instructed that this was a fact for their determination, under all the facts and circumstances detailed in evidence. In settling that question, the jury were told, as requested by defendant, that they might "take into consideration the condition of the building after the Jaccard fire, the time within which the building could have been put in such a condition as to make Oviatt's portion thereof habitable, the business of the occupant, together with the business uses to which such portion might reasonably or naturally be put, and all the facts and circumstances in evidence."

The condition of the wall paper placed in the building by the subtenant, piano company, during the continuation of the lease, had nothing to do with the plaintiff's obligation to restore the damaged room to a habitable condition. The clause in the lease did not contemplate that the landlord should restore the wall

decorations placed there by the tenant. The court, therefore, properly declined to give defendant's instruction number 6.

As to plaintiff's instruction number 7, we deem it dubious and useless, but entirely harmless. Viewed in the light of the explanation given by plaintiff's counsel in their brief, we can not see that it was objectionable.

We deem it unnecessary to further discuss the points made in counsel's brief. The instructions are substantially correct; it is admitted that there was evidence upon which to predicate them, and we shall, therefore, affirm the judgment. All concur.